```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
```

MOGUL MEDIA, INC., MOHAMMAD MALIK, MOGUL MEDIA LLC, BRUCKNER OUTDOOR SIGNS, INC., BRUCKNER OUTDOOR SIGNS LLC, MUCHO MEDIA LLC, 34-06 73RD LLC, OUTDOOR PROMOTERS & TRADERS UNLIMITED, INC., SPOILERS & SUNDRIES PROMOTIONS, INC., MONUMENTS R US, INC., ELITE PROMOTIONS SYSTEMS, INC., MOGUL SCRAP UNLIMITED, INC., RYAN LEE PROPERTIES LLC, MAM PROPERTIES LLC, MEDIA PRODUCTIONS UNLIMITED, INC., KING SUNDRIES PROMOTION UNLIMITED LLC, PROSPECT MEDIA, LLC, SPRINT PROMOTION SYSTEMS INC., OMNI PRODUCTION SYSTEM, LLC, YAHOO MEDIA INC., SPECIAL MEDIA DINER LLC, OUTDOOR STUDIO PROMOTERS, LLC, 54-18 43RD REALTY CORP., LEXUS'S PROSPECT PROMOTION LLC, and VAN DAM SPECIALTY & PROMOTION INC.,

                       Plaintiffs,

      -v-

THE CITY OF NEW YORK, THE BOARD OF STANDARDS AND APPEALS OF THE CITY OF NEW YORK, THE NEW YORK CITY COUNCIL, NEW YORK CITY DEPARTMENT OF BUILDINGS, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, and NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION,

                       Defendants.

```
------------------------------------------------------------------X
```

16 Civ. 9794 (PAE)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/22/2017

PAUL A. ENGELMAYER, District Judge:

       The City of New York has long attempted to limit the visual blight and potential for danger that large billboards along its major thoroughfares may present. In this case, plaintiffs—owners or lessees of property on which billboards are or have been displayed—challenge two of

1

the City's zoning regulations as discriminatory against them in violation of the First Amendment and as a regulatory taking without just compensation in violation of the Takings Clause of the Fifth Amendment. In particular, they contend that defendants—the City and several other municipal entities (referred to collectively as the "City")—impermissibly allow billboards at the Citi Field ballpark while prohibiting comparable billboards on nearby properties in the Willets Point neighborhood of Queens owned by plaintiffs. Plaintiffs' First Amended Complaint ("the FAC") seeks declaratory, injunctive, and monetary relief.

The City has now moved to dismiss the FAC, arguing that the City's zoning regulations comport with the First Amendment and the Takings Clause and that the Court lacks jurisdiction to consider the Takings Clause claim because plaintiffs have not exhausted their state-law remedies. The Court grants the motion to dismiss, because on-point Second Circuit precedent forecloses the First Amendment claims and because this Court lacks jurisdiction to consider the Takings Clause claims.

**I.   Background**

    **A.   New York City's Zoning Regulations**

        **1.   The City's Billboard Regulations**

In 1940, New York first promulgated a zoning regulation, the precursor to one at issue here, to address the visual blight and threat of distraction caused by large signs near parks and arterial roadways. New York, N.Y., Zoning Resolution ("ZR") § 21–B (1940), *renumbered* §§ 32–66, 42–53 (1961), *renumbered* §§ 32–662, 42–55 (2001); *see Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 99–100 (2d Cir. 2010) ("*Clear Channel*") (detailing history of City's billboard zoning); *Infinity Outdoor, Inc. v. City of New York*, 165 F. Supp. 2d

403, 406–411 (E.D.N.Y. 2001) (same).[1] That regulation has been revised several times since then, but at its heart has remained "the distinction between off-site commercial and on-site signs." *Infinity*, 165 F. Supp. 2d at 406; *see also Clear Channel Outdoor, Inc. v. City of New York*, 608 F. Supp. 2d 477, 482–83 (S.D.N.Y. 2009), *aff'd*, 594 F.3d 94 (2d Cir. 2010). An off-site sign, also known as an advertising sign, is "a sign that directs attention to a business, profession, commodity, service or entertainment conducted, sold or offered *elsewhere* than upon the same zoning lot and is not accessory to a use located on the zoning lot." ZR § 12–10 (2001) (emphasis added). On-site signs, formerly known as business signs and now referred to as "accessory use" signs, "direct attention to a business or profession conducted upon the premises." *Infinity*, 165 F. Supp. 2d at 406; *see* ZR § 12–10. The 1940 regulations prohibited signs in residential and commercial districts, while (1) making exceptions for certain particularly busy commercial districts (such as Time Square), and (2) excluding on-site signs from the general prohibition. *Infinity*, 165 F. Supp. 2d at 406–07. "The basic prohibition contained in the 1940 Zoning Resolution remains in force today" in those manufacturing commercial districts where advertising signs are permitted at all. *Clear Channel*, 594 F.3d at 99.

---

[1] The blight of billboards along New York City's major roads, in fact, well predates 1940. *See* F. Scott Fitzgerald, The Great Gatsby 23–24 (1925) ("But above the gray land and the spasms of bleak rust which drift endlessly over it, you perceive, after a moment, the eyes of Doctor T.J. Eckleburg. The eyes of Doctor T.J. Eckleburg are blue and gigantic—their retinas are one yard high. They look out of no face, but, instead, from a pair of enormous yellow spectacles which pass over a non-existent nose. Evidently some wild wag of an oculist set them there to fatten his practice in the borough of Queens, and then sank down himself into external blindness, or forgot them and moved away. But his eyes, dimmed a little by many paintless days, under sun and rain, brood on over the solemn dumping ground."). Fitzgerald's "valley of the ashes," above which Dr. Eckleburg's billboard loomed, is believed to be the Willets Point area at issue in this case. *See Mayor: Valley of Ashes in 'Great Gatsby' Was Inspired By Willets Point*, WNYC News, June 4, 2012, http://www.wnyc.org/story/216534-blog-mayor-valley-ashes-great-gatsby-was-inspired-willets-point (quoting then-Mayor Michael Bloomberg as saying Willets Point "was the inspiration for F. Scott's Fitzgerald's valley of the ashes, and it remains one of the city's most polluted sites.").

3

In 1997, the New York Supreme Court, Kings County, held that the City's zoning regulation violated the First Amendment because it impermissibly favored commercial off-site advertisements over non-commercial advertisements. *City of New York v. Allied Outdoor Advert., Inc.*, 659 N.Y.S.2d 390, 394–95 (Sup. Ct. 1997). In response, the City revised its regulations. *See Infinity Outdoor*, 165 F. Supp. 2d at 408; *Clear Channel*, 608 F. Supp. 2d at 482. "Thus, the amended Zoning Resolution continues to prohibit advertising signs near highways and parks and to permit accessory signs, but now provides for non-commercial signs. As with accessory signs, it permits non-commercial signs near highways and parks." *Infinity Outdoor*, 165 F. Supp. 2d at 408. "Thus, as a result of the 1998 amendments, both on-site accessory-use signs and off-site non-commercial signs were—and currently are—permitted within 200 feet of an arterial highway. Off-site advertising signs are still prohibited in those areas." *Clear Channel*, 608 F. Supp. 2d at 483.

In 2001, the City once again amended its sign regulations by adopting Local Law 14. *See Clear Channel*, 594 F.3d at 99–100. "The reason for these amendments was the proliferation in the number and size of signs that had resulted from new technologies and the 'rampant illegality and lack of effective enforcement' that threatened the City's aesthetic appeal and traffic safety." *Infinity Outdoor*, 165 F. Supp. 2d at 409 (quoting *City Planning Commission Report* 2–8, 30 (Dec. 13, 2000); *Hearing Before the New York City Council Subcommittee on Zoning & Franchises* 11, 16–18 (Jan. 9, 2001)). The 2001 amendments (1) added certain limits on size, illumination, and projection for signs in manufacturing districts; (2) granted non-conforming use status to certain signs in manufacturing districts; and (3) limited the size of accessory signs. *See id.* at 410–11.

The current version of Zoning Regulation 32-662, applicable in commercial districts, provides that "no advertising sign shall be located, nor shall an existing advertising sign be structurally altered, relocated or reconstructed within 200 feet of an arterial highway or of a public park with an area of one half acre or more, if such advertising sign is within view of such arterial highway or public park." ZR § 32-662 (2016). Section 42-55 provides for substantially the same restriction in manufacturing districts.[2] Off-site advertising signs in residential districts are banned entirely. *See Clear Channel*, 608 F. Supp. 2d at 485 n.7.

"In sum, under the current Zoning Resolution, advertising signs are allowed, subject to regulation of size and other qualities, in some commercial districts and all manufacturing districts, so long as they are not within 200 feet of an arterial highway or public park, or located at a distance from the highway or public park in linear feet equal to or greater than their size in square feet. Accessory signs and non-commercial signs are allowed in all commercial and manufacturing districts, but they are subject to stricter size regulations near highways and parks." *Infinity*, 165 F. Supp. 2d at 411.

### 2. The Special Willets Point District

In 2008, the City created a "Special Willets Point District" to "promote and protect public health, safety and general welfare" in the Willets Point neighborhood of Queens, with the specific purposes of, *inter alia*, "transform[ing] Willets Point into a diverse and sustainable community that enhances connections to its surroundings through a unique combination of uses,"

---

[2] Zoning Regulation § 42-55 provides that, within 200 feet of an arterial roadway or public park: "(1) no permitted sign shall exceed 500 square feet of surface area; and (2) no advertising sign shall be allowed, nor shall an existing advertising sign be structurally altered, relocated or reconstructed." Z.R. § 42–55. Plaintiffs do not challenge § 42-55. But, because § 42-55 is substantially identical to § 32-662, any similar as-applied challenge to it would fail for the same reasons set out here.

5

"creat[ing] a retail and entertainment destination that catalyzes future growth and strengthens Flushing's role as a nexus of economic, social and cultural activity," and "encourag[ing] a mix of uses that complement sporting venues within Flushing Meadows-Corona Park . . . ." ZR § 124-00. As part of the creation of the Special District, the City re-zoned the area, allowing for higher-density development on certain lots. ZR § 124-21; see FAC ¶ 68. ZR § 124-21 allows property owners of lots greater than 200,000 square feet to exceed the "floor area ratio" (FAR) of 2.0 that otherwise prevails in the Special District. Lots under 200,000 square feet may not exceed a FAR of 2.0—that is, the total amount of floor space built on such a lot may not exceed twice the square footage of the lot itself. See ZR § 124-21. For lots greater than 200,000 square feet in the Special District, the maximum allowable FAR can be as high as 5.0. See id.

### B. Plaintiffs' Properties At Issue Here[3]

Plaintiffs here are several owners, former owners, or lessees of property "on which outdoor advertising sign structures were and are located." FAC ¶ 49.[4] Those properties "are located within distances from Arterial highways where Defendants have prohibited outdoor

---

[3] The Court draws these facts principally from plaintiffs' first amended complaint (the "FAC"). The Court accepts all factual allegations in the FAC as true, drawing all reasonable inferences in plaintiffs' favor. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." See DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

[4] Plaintiffs include several business entities and a natural person, Mohammad Malik, who is the principal of each of the 40 entity plaintiffs in this action. FAC ¶ 8.

advertising signs . . . ." *Id.*[5] One plaintiff, Mucho Media LLC, had a permit to construct a sign structure and began construction on that sign. *Id.* ¶ 12. Mucho Media's permit was cancelled by the City. *Id.* ¶ 75. Since 2010, the other plaintiffs have also been "forced to discontinue the use of their signs, on pain of prohibitive civil penalties and fines and the possibility of criminal prosecution . . . ." *Id.* ¶ 86.

Several of plaintiffs' properties are located in Queens County, including at least one, Mucho Media's property, in the Willets Point neighborhood. *See id.* ¶¶ 12–21, 23, 29–31, 37–40, 45–48. In the Willets Point neighborhood, the New York Mets constructed a new stadium, known as Citi Field, which has been open for business since April 1, 2009. *Id.* ¶ 79. At the Citi Field site, the Mets have erected outdoor advertising signs and accessory use signs "that are located the same distances from arterial highways and parks as the outdoor advertising signs or accessory use signs of Plaintiffs." *Id.* ¶ 80.

Plaintiff Mucho Media LLC owns a piece of property within the Special Willets Point District. *See* FAC ¶¶ 12, 97. Mucho Media's property is "of insufficient size to enable" it to develop it. *Id.* ¶ 97.

## C. Procedural History

On December 19, 2016, plaintiffs filed their complaint in this case. Dkt. 1. On January 26, 2017, the Court granted defendants' request to extend their deadline to answer to April 6, 2017. Dkt. 7; *see* Dkt. 6. On February 28, 2017, the parties informed the Court that plaintiffs would be filing an amended complaint, Dkt. 9, and on March 10, 2017, plaintiffs did so, Dkt. 10,

---

[5] Although the FAC does not allege as much, the Court assumes for the purposes of this decision that plaintiffs' properties are located within commercial districts subject to § 32-662, the regulation their complaint challenges.

7

bringing as-applied challenges to the signage regulations under the First Amendment and the Takings Clause of the Fifth Amendment.

The Court again extended the defendants' deadline to answer. Dkt. 12. On April 26, 2017, defendants filed a motion to dismiss, along with a memorandum of law (the "Def. Br.") and the declaration of Emily K. Stitleman. Dkts. 13–15. On July 10, 2017, after the Court granted a series of requests for extensions, *see* Dkts. 16–23, plaintiffs filed their brief in opposition (the "Pl. Br."), along with the declaration of Mohammad Malik, Dkts. 24–25. On July 27, 2017, defendants filed their reply (the "Def. R. Br."). Dkt. 26.

## II. Legal Standards

### A. Motions to Dismiss for Lack of Jurisdiction (Rule 12(b)(1))

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Relevant here to plaintiffs' Takings Clause claim, a district court lacks constitutional authority to adjudicate a claim that is unripe because "[r]ipeness is a jurisdictional inquiry . . . rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). To satisfy this "ripeness requirement, a plaintiff alleging a Fifth Amendment taking of a property interest must satisfy a two-prong test and show that (1) the state regulatory entity has rendered a 'final decision' on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *see Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186–97 (1985).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton,* 452 Fed. App'x. 24, 27 (2d Cir. 2011) (citing *Makarova,* 201 F.3d at 113). In resolving a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Natural Res. Def. Council v. Johnson,* 461 F.3d 164, 171 (2d Cir. 2006) (internal quotation omitted), but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998); *see also APWU v. Potter,* 343 F.3d 619, 623 (2d Cir. 2003); *Amidax Trading Group v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir. 2011). On such a motion, a court may consider evidence outside the pleadings, such as affidavits and exhibits. *See Makarova,* 201 F.3d at 113.

### B. Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6))

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. A

pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**III. Analysis**

 **A. Plaintiffs' First Amendment Claim**

  **1. The *Clear Channel* Decision**

The Second Circuit's decision in *Clear Channel* controls the First Amendment question presented here and requires dismissal of plaintiffs' claims.

In *Clear Channel*, a group of plaintiffs, owners of large billboards near arterial roadways in New York City, challenged the City's zoning regulations—ZR § 42-55 and ZR § 32-662—as applied to their billboards. 594 F.3d at 98. The *Clear Channel* plaintiffs' principal objection to the City's billboard zoning regulations was that the City had been improperly under-inclusive in its enforcement. *Id.* at 100. In particular, the *Clear Channel* plaintiffs objected to the City's decision not to enforce the billboard regulations on property owned by the Metropolitan Transit Authority, the Port Authority, and Amtrak. *See id.* at 101. They argued that "New York City viewed increased revenues for mass transit—not aesthetics or traffic safety—as the paramount concern in actively supporting an exemption for Transit Authority signs from its zoning regulations," and that "the City has made a concerted effort over several decades . . . not to enforce the Arterial Advertising Ban against billboards on any railroad property, including billboards on the MTA, LIRR, Conrail, Amtrak and other railroad or Port Authority property." *Id.* at 101. A separate plaintiff, an owner of smaller, illuminated signs, separately challenged the City's zoning regulations. It argued that the regulations unfairly distinguished between its signs—which were prohibited—and those of a government contractor whose signs were allowed to be displayed on the outside of newsstands and street furniture pursuant to an exemption in the regulations. *Id.* at 101–02.

The Second Circuit in *Clear Channel* rejected both sets of challenges. It began its assessment by finding that the standards governing restrictions on commercial speech applied to the City's zoning regulations. *Id.* at 103 (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563–66 (1980)). The Circuit noted the *Central Hudson* requirement that the City "assert a substantial interest to be achieved" by its regulation of protected commercial speech, and recognized that the "'twin goals' of protecting the aesthetic appearance of a city and maintaining traffic safety are 'substantial government goals.'" *Id.* (quoting *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–08 (1981)). Further, the Circuit explained, to satisfy the *Central Hudson* test, the City must also show that (a) the restriction "directly advances" the City's interest, and (b) it is not "more extensive than is necessary to serve that interest." *Id.* But those requirements do not demand that the City "adopt the 'least restrictive means' of advancing its asserted interest." *Id.* at 104. Instead, the Circuit stated, "what is 'require[d] is a fit between the legislature's ends and the means chosen to accomplish those ends—a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'" *Id.* (quoting *Bd. of Tr. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)). In sum, the Circuit explained, Supreme Court precedent instructs that "if the City's determination about how to regulate outdoor commercial advertising is 'reasonable'—and we find that it is in this case—then we should defer to that determination." *Id.*[6]

---

[6] The Second Circuit's later decision in *IMS Health Inc. v. Sorrell*, 630 F.3d 263, 279–80 (2d Cir. 2010), *aff'd*, 564 U.S. 552 (2011), distinguished *Clear Channel* and its holding that a court ought to defer to the City's reasonable determination regarding how to regulate commercial speech. It did so on the grounds that the *Clear Channel* decision "specifically addresse[d] a regulation of commercial billboards, a distinctive method of speech that poses unique problems such as the potential to distract drivers and is therefore particularly amenable to government regulation." But given the basis for the *IMS* court's distinction—that regulations on billboard

11

Against that legal backdrop, the Second Circuit examined the First Amendment claims brought by the two sets of plaintiffs.

First, the Circuit considered the plaintiffs' argument "that the City violates the protections afforded commercial speech when it distinguishes between their signs or billboards and those located on government property." *Id.* at 106. That argument was foreclosed, the Circuit explained, because the Supreme Court "has already rejected 'the argument that a prohibition against the use of unattractive signs cannot be justified on [a]esthetic grounds if it fails to apply to all equally unattractive signs wherever they might be located.'" *Id.* (quoting *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 810 (1984)). A restriction on commercial billboards is not invalid, the Circuit stated, merely "because it does not *fully* accomplish the articulated objectives." *Id.* at 107. And, the Circuit held, it was "clear that, despite its exceptions, New York City's Zoning Resolution directly advances its interests in traffic safety and aesthetics." *Id.*

The Circuit next addressed plaintiffs' argument that the Zoning Regulations were unlawfully under-inclusive because they allowed the City to contract with a third party to put coordinated advertisements on street furniture. *Id.* The Circuit found persuasive the Ninth Circuit's decision in *Metro Lights*, which had addressed "the question of 'whether a city violates the First Amendment by prohibiting most offsite commercial advertising while simultaneously contracting with a private party to permit sale of such advertising at city-owned transit stops.'"

---

communications implicate a type of speech distinct from the pharmaceutical marketing communications at issue in *IMS*—nothing in *IMS* undercuts the continued application of the holding in *Clear Channel*. In the field of First Amendment law, each mode of communication "is a law unto itself." *Kovacs v. Cooper*, 336 U.S. 77, 97 (1949) (Jackson, *J.*, concurring); *see Metromedia*, 453 U.S. at 501. Nor does the Supreme Court's decision affirming the Circuit's decision in *IMS*, call into question the holding or reasoning of *Clear Channel*. *See* 564 U.S. 552.

12

*Id.* (quoting *Metro Lights, LLC v. City of Los Angeles*, 551 F.3d 898, 900 (9th Cir. 2009), *cert. denied*, 558 U.S. 1091 (2009)). That situation, the Circuit stated, was "similar to the one presented here," in which the City had contracted with a third party for "for the installation, operation, and maintenance of bus shelters, automatic public toilets, newsstands, and other 'public service structures'" and had allowed that third party to display advertisements that would have otherwise run afoul of the zoning regulations. *Id.*

> The Circuit concluded:
>
> The distinctions drawn by the Zoning Resolution between permissible and impermissible locations for outdoor commercial advertising are meaningful and do not defeat the purpose of the City's regulatory scheme. The City may legitimately allow limited and controlled advertising on street furniture, while also reducing clutter on City sidewalks. Allowing some signs does not constitutionally require a city to allow all similar signs. The zoning scheme does not result in a mere channeling effect. The City's interests in aesthetics, preservation of neighborhood character, and traffic safety continue to be advanced, even though limited and controlled advertising is permitted on street furniture.

*Id.* at 110.

### 2. Analysis of the Claims Here

Plaintiffs here argue that their claims are not controlled by *Clear Channel*. They present their claims as challenging the City's decision to allow its own tenant "to erect signs that are barred elsewhere," a decision that "cannot be justified under any esthetics or valid governmental purpose." Pl. Br. at 11. Plaintiffs argue that the City's decision to allow a sign at Citi Field is "a money making scheme" for the City and its tenant "at the expense of private parties who would be barred from the same conduct." *Id.* A claim based on that practice, plaintiffs argue, was not before the Second Circuit in *Clear Channel*. *Id.*

Plaintiffs are mistaken. The *Clear Channel* plaintiffs presented exactly this argument: A principal contention of the plaintiffs there was that the zoning regulations impermissibly favored signs on City- and State- controlled property. *See* 594 F.3d at 101. And the *Clear*

13

*Channel* court rejected it: The Court held that the City's interest in traffic safety and aesthetics justified its regulation of off-site advertising, and held foreclosed by Supreme Court precedent the argument that the "City violates the protections afforded commercial speech when it distinguishes between [plaintiffs'] signs or billboards and those located on government property." *See id.* at 106–07 (citing *Taxpayers for Vincent*, 466 U.S. at 810, and *Metromedia*, 453 U.S. at 495); *see also id.* at 105 n.12 (rejecting claim that City had impermissibly favored its *own* speech over private speech).

Plaintiffs also contend that *Clear Channel* is "inapplicable" because the signs permitted at Citi Field "are no more esthetically pleasing" than plaintiffs' signs and are "more distracting and overt than static advertising signs being prohibited elsewhere." Pl. Br. at 11–12. Again, *Clear Channel* is indistinguishable. As the Circuit there explained, "the Supreme Court has already rejected 'the argument that a prohibition against the use of unattractive signs cannot be justified on [a]esthetic grounds if it fails to apply to all equally unattractive signs wherever they might be located.'" *Clear Channel*, 594 F.3d at 106 (quoting *Taxpayers for Vincent*, 466 U.S. at 810). "It is clear that, despite its exceptions, New York City's Zoning Resolution directly advances its interests in traffic safety and aesthetics." *Id.*

Even if *Clear Channel* were distinguishable, plaintiffs' complaint would fail to state a claim under the First Amendment for a separate reason. That is because, as plaintiffs allege, the sign at Citi Field to which they object is *not* located within an area subject to ZR § 32-662 (or ZR § 42-55). Zoning Regulation § 32-662 applies within Commercial Districts (and the substantially similar Zoning Regulation § 42-55 applies in manufacturing districts). Citi Field, however, is located in neither. *See* ZR § 11-13. Plaintiffs' objection, therefore, is really directed at the City's decision to zone one area as commercial and another area—Citi Field—as a park

14

not subject to the same restrictions. But, under settled law, the fact that a zoning regulation such as ZR § 32-662 is, arguably, under-inclusive does not offend the First Amendment. A City may enforce its regulation on "the use of unattractive signs . . . on [a]esthetic grounds" even "if it fails to apply to all equally unattractive signs wherever they might be located." *Taxpayers for Vincent*, 466 U.S. at 810; *see Clear Channel*, 594 F.3d at 106. Accordingly, even if the Second Circuit in *Clear Channel* had not expressly rejected the very First Amendment claims made in the FAC, this Court would nevertheless dismiss those claims.[7]

### B. This Court Lacks Jurisdiction to Consider Plaintiffs' Takings Claim

Plaintiffs' claim under the Takings Clause fails for a separate reason. Plaintiffs have not availed themselves of the procedures under New York state law to seek compensation for the taking alleged here. As a result, their claim under the Takings Clause is not ripe for review in federal court.

As the Second Circuit has explained, "a plaintiff alleging a Fifth Amendment taking of a property interest must satisfy a two-prong test and show that (1) the state regulatory entity has rendered a 'final decision' on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure." *Dougherty*, 282 F.3d at 88; *see Williamson*, 473 U.S. at 186–97. Here, the City argues that plaintiffs have failed to avail themselves of "at least two potential state based remedies for seeking just compensation." Def. R. Br. at 6; *see also* Def. Br. at 3, 23.[8]

---

[7] In light of this holding, the Court has no occasion to reach defendants' alternative argument, *see* Def. Br. at 3 n.4, that—irrespective of the merits of plaintiffs' First Amendment challenge—the FACs' claims must be dismissed against several defendants whom defendants claim are not adequately alleged to have caused any unlawful action.

[8] These remedies are: (1) initiating a proceeding, under New York CPLR Article 78, to compel the city to undertake a formal condemnation proceeding; and (2) filing an inverse condemnation

15

Plaintiffs, notably, do not dispute that they have not pursued state remedies. *See* Pl. Br. at 13–16. Nor does the FAC allege that plaintiffs have sought compensation by means of an available state remedial procedure, or that such procedures do not exist under New York law. *See id.* And no such claim could validly be made. *See Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 156–57 (E.D.N.Y. 2006); *see also Kurtz v. Verizon N. Y., Inc.*, 758 F.3d 506, 514 (2d Cir. 2014) ("It is well-settled that New York State has a reasonable, certain and adequate provision for obtaining compensation." (quoting *Country View Estates*, 452 F. Supp. 2d at 157)); *Vandor*, 301 F.3d at 39. Thus, whether the City's challenged actions represent a final regulatory action, plaintiffs fail the second prong of the *Dougherty* test: They have not sought just compensation by means of the state procedures available to them. Accordingly, this Court lacks jurisdiction to consider plaintiffs' takings claim and must, pursuant to Rule 12(b)(1), dismiss it.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss is granted. The Clerk of Court is respectfully directed to close this case.

---

proceeding for a de facto taking. *See Gounden v. City of New York*, No. 10 CIV. 3438 (BMC), 2011 WL 13176048, at *3 (E.D.N.Y. Apr. 22, 2011) (describing these procedures); *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002) ("Article 78 is a form of proceeding available to compel public officials to comply with their responsibilities."); *United States v. Clarke*, 445 U.S. 253, 257, 100 S. Ct. 1127 (1980) (noting that an inverse condemnation action describes "the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted").

16

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: December 22, 2017
      New York, New York